**TAGLER et al. v. F. D. CARPENTER COAL CO.**
Civ. A. No. 3700.

District Court, N. D. Illinois, E. D.
March 10, 1943.

Frank S. Righeimer, of Chicago, Ill., for plaintiffs.

Kirkland, Fleming, Green, Martin & Ellis, of Chicago, Ill., for defendants.

BARNES, District Judge.

The court has further considered this case in the light of the supplemental briefs of the parties and of the brief of the administrator as amicus curiæ, and is of the opinion: That the plaintiff, Ernest Montore, is engaged in interstate commerce within the meaning of the Fair Labor Standards Act; and that the plaintiffs, Charles Tagler and Lucille Crespegne, are not engaged in interstate commerce but, on the contrary, are engaged in intrastate commerce.

The court is further of the opinion that the defendant, F. D. Carpenter Coal Company, is a "retail establishment" within the meaning of Section 13(a) (2) of the Act, 29 U.S.C.A. § 213(a) (2), and that, accordingly, all of its employees are exempt from the provisions of the Act.

The complaint may be dismissed at plaintiffs' costs.

Counsel for defendant may, within a short day and on notice, present drafts of findings of fact, conclusions of law, and a judgment order giving effect to the views hereinabove expressed.

Findings of Fact, Conclusions of Law and Judgment.

This action having come on for trial before the court without a jury, and having been submitted for decision and judgment on the pleadings, an agreed statement of facts, and testimony of witnesses taken in open court, and the court, after hearing all the evidence adduced and the arguments of counsel and being fully advised in the premises, finds:

### Findings of Fact.

1. That the plaintiffs herein are residents of the city of Chicago, State of Illinois, are employees of the defendant and have been employees of the defendant continuously since October 24, 1938;

2. That defendant is a corporation organized and existing under the laws of the State of Illinois and its place of business is and has been since October 24, 1938 located in the city of Chicago, State of Illinois;

3. That defendant is engaged in the purchase, handling and distribution of coal which it buys from mining companies located in the states of Virginia, West Virginia, Kentucky, Indiana and Illinois; that the defendant buys coal in large quantities from the mining companies located in the said states; that such coal is shipped by railroad to defendant's place of business in Chicago, Illinois; that 88 per cent of such coal thus shipped to defendant's said place of business is shipped from states other than the State of Illinois;

4. That the coal thus shipped into the yards of the defendant is unloaded at the yards of the defendant in Chicago, Illinois, in the following manner: (a) some of the coal is conveyed from the cars which transported it to the yards of the defendant, into hoppers from which the coal is loaded into trucks, and delivered to the customers of the defendant in Chicago; (b) some of the coal is taken off the cars which transported it to the yards of the defendant, by conveyors, and piled about the said yards and later loaded from said piles into trucks by which it is delivered to the said customers of the defendant; (c) some of the coal is unloaded from the railroad cars which transported it into the yards of the defendant onto conveyors which carry the coal directly to the defendant's trucks which deliver it to the customers of the defendant in Illinois; 13.72% of the coal shipped to defendant's yards from states other than Illinois is unloaded from the railroad cars that transported it into the yards of the defendant onto conveyors, which carry the coal directly to the defendant's trucks which deliver it to the customers of the defendant in Illinois;

5. That the unloading of said coal is handled in all instances by the employees of the defendant and by machinery owned by defendant;

6. That the coal which has been purchased out of state and delivered by railroad cars into the yards of the defendant in Illinois is thereafter delivered to customers of the defendant in Illinois; that these customers have in some instances placed their orders with the defendant before the defendant has purchased the coal which it will use to fill such orders from the mines of states outside of Illinois; that other purchases are made by the defendant from mines outside the state of Illinois in anticipation of the orders of customers in Illinois who purchase coal from defendant, and in substantially the same quantities each year, and the shipment of coal from mines outside the state of Illinois into the yards of the defendant in Illinois is made with the intent on the part of the defendant that part of the coal thus shipped into its yards will be delivered by the defendant to such customers;

7. That all coal purchased by the defendant from the mines is purchased in carload lots and no specific carload is ever purchased for any specific customer; that none of the coal is ever sent from the mine whether within or without the State of Illinois directly to customers of the defendant, and that none of the coal is ever marked or identified as being merchandise purchased by or for any particular customer but all of the coal handled or sold by the defendant is unloaded in its yards from the railroad cars before it is delivered to defendant's customers;

8. That all sales of coal made by defendant are made within the territorial limits of the city of Chicago and State of Illinois and no coal whatever is sold by the defendant outside of the said city of Chicago;

9. That during the period beginning October 24, 1938, and continuously up to the present time the defendant employed the plaintiff Charles Tagler to drive one of the trucks owned by the defendant and used by the defendant for the delivery from its yards to the premises of the defendant's customers in Chicago, Illinois, of coal which had been shipped as aforesaid into defendant's yards; during said period of employment the said Charles Tagler did deliver by truck to defendant's customers in Chicago, Illinois, coal shipped from out of the State into defendant's yards and loaded onto the said truck in the several manners heretofore set forth; among the deliveries of coal made by the said Charles

Tagler during the said period of employment were deliveries of coal which had been shipped into defendant's yards by railroad from out-of-state and loaded by conveyor from the railroad cars onto the truck by which Charles Tagler thence carried the coal to such of defendant's customers and in such percentages as are set forth hereafter in paragraph 15 hereof;

10. That during the period beginning October 24, 1938 and continuously to the present time the defendant employed the plaintiff Lucille Crespegne in its offices at Chicago, Illinois, to do general secretarial work, to assist in keeping the books of the defendant, to assist in the acceptance of customers' orders, and to perform general stenographic duties in and about defendant's said office; that during the same period said plaintiff Lucille Crespegne prepared company checks from work sheets and time schedules prepared by others for the payment of wages to the yard men, truck drivers and laborers of the defendant, including the plaintiffs herein, Tagler and Montore, who performed the manual labors necessary to the unloading and delivery of the coal which had been shipped as aforesaid into the yards of the defendant; that during the same period said plaintiff Lucille Crespegne did not have any part in placing of the defendant's orders for coal, and did not have any part in the preparation and keeping of work sheets and time schedules for the yard men, truck drivers and laborers of defendant, including the plaintiffs herein, Tagler and Montore;

11. That during the period beginning October 24, 1938 and continuously up to the present time the defendant employed the plaintiff Ernest Montore as a yard man at its premises in Chicago, Illinois; the defendant employed the said plaintiff to assist in the unloading of the coal shipped as aforesaid into the defendant's yards and in the transporting of such coal into hoppers or onto conveyors or into trucks in the manner described in paragraph 4 above; that during the said period the plaintiff Ernest Montore did unload coal from the railroad cars in which it had been shipped from the mines as aforesaid and did load the coal onto hoppers, conveyors or directly onto defendant's trucks for delivery to defendant's customers, including such of defendant's customers and in such percentages as are set forth hereinafter in paragraph 15 hereof; that during the same period the said plaintiff performed general services in and about defendant's yards as watchman, maintenance man and loader, and during such period did handle, deal with, and perform labors on the coal shipped as aforesaid into defendant's yards;

12. That during the period beginning October 24, 1938 and ending October 23, 1939, the defendant did employ the plaintiffs, Charles Tagler, Lucille Crespegne and Ernest Montore for work weeks longer than forty-four hours, and the said plaintiffs were not compensated for such employment in excess of forty-four hours per work week at a rate of at least one and one-half times the regular rate at which they were employed;

13. That during the period beginning October 24, 1939 and ending October 23, 1940 the defendant did employ the plaintiffs Charles Tagler, Lucille Crespegne and Ernest Montore for work weeks longer than forty-two hours, and the said plaintiffs were not compensated for such employment in excess of forty-two hours per work week at a rate of at least one and one-half times the regular rate at which they were employed;

14. That during the period beginning October 24, 1940 and ending October 23, 1941 the defendant did employ the plaintiffs Charles Tagler, Lucille Crespegne and Ernest Montore for work weeks longer than forty hours, and the said plaintiffs were not compensated for such employment in excess of forty hours per work week at a rate of at least one and one-half times the regular rate at which they were employed; that if the plaintiffs are entitled to recover for the overtime work described, by reason of the provisions of the Fair Labor Standards Act, they would be entitled to recover the following amounts: Charles Tagler—$291.-85, Lucille Crespegne—$882.63, Ernest Montore—$621.71;

15. That according to dollar volume, defendant's sales to its customers are distributed as follows: 34.46% of its sales are for use in single family dwellings; 11.93% of its sales are for use in two-flat dwellings; 45.41% of its sales are for use in buildings of three or more apartments; 3.45% of its sales are for use in institutions; and 4.75% of its sales are for industrial use;

16. That each delivery made by the defendant to its customers is a delivery of less than a carload lot, and is for use or consumption by its said customers and not for resale;

17. That annual sales for the use of apartment buildings having three or more apartments, and for the use of institutions and industries, involve quantities of coal larger than the quantity generally purchased for use in single or two-family dwellings, and deliveries to the former class of customers are generally made in full 10-ton truck loads, whereas deliveries for use in single or double family dwellings are made in fractional truck loads of four tons or less, or in smaller trucks;

18. That the price at which the defendant sells its coal is uniform at the yard for all coal of the same grade regardless of the amount purchased; that the price at which defendant sells its coal is also uniform at the premises of the customer for all coal of the same grade regardless of the amount purchased when it is merely dumped on the premises of the customer; where, however, the customer requires the defendant to perform the service of delivering the coal into the customer's bin, then defendant makes additional charges for such service, according to the manner in which such coal is delivered, which said charges are uniform for all coal regardless of kind or grade and are also uniform as to all classes of customers, as follows:

(a) For shoveling the coal into a coal hole leading to the customer's bin, 25¢ per ton;

(b) For wheeling the coal from the curb or alley in wheelbarrows to the customer's bin, 60¢ per ton;

(c) For carrying the coal in bags from the curb or alley to the customer's bin, 85¢ per ton;

19. That because of the fact that a different type or grade of coal is used in large apartment buildings and industrial buildings from that used in homes and small apartment buildings there is a difference in price per ton between the grade and type of coal sold by defendant to private homes and small apartment buildings, and the grade and type of coal sold to large apartment buildings, institutions and industrial plants, the price per ton of coal sold to large consumers being substantially less than the price per ton of coal sold to small consumers because of this difference in grade and type;

Conclusions of Law.

1. That the court has jurisdiction of the parties hereto and the subject matter hereof;

2. That the plaintiff, Ernest Montore, is engaged in interstate commerce within the meaning of the Fair Labor Standards Act;

3. That the plaintiffs, Charles Tagler and Lucille Crespegne, are not engaged in interstate commerce but, on the contrary, are engaged in intrastate commerce;

4. That the defendant, F. D. Carpenter Coal Company, is a "retail establishment" within the meaning of Section 13(a) (2) of the Fair Labor Standards Act, 29 U.S.C.A. § 213 (a) (2), and, accordingly, all of its employees are exempt from the provisions of the Act;

Wherefore, it is hereby ordered, adjudged and decreed:

That plaintiffs Charles Tagler, Lucille Crespegne and Ernest Montore take and recover nothing from the defendant F. D. Carpenter Coal Company, a corporation, but that judgment be entered for defendant F. D. Carpenter Coal Company, a corporation, and the complaint be dismissed as against it for failure of plaintiffs to prove the allegations of the complaint;

That all costs herein be assessed against the plaintiffs Charles Tagler, Lucille Crespegne and Ernest Montore, and that defendant go hence without day.